**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**MICHELLE HAGEN,**

    Plaintiff,

    v.

**FOND DU LAC SCHOOL DISTRICT**        Case No.  19-CV-1863

    Defendant.

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

<u>INTRODUCTION</u>

The plaintiff, Michelle Hagen brings this case with the full understanding this court is not a super personnel department used to correct poor employment decisions by the defendant, Fond du Lac School District. Further, Hagen understands that the District's former Superintendent James Sebert had the authority to make assignments of administrators as he deemed necessary.

However, this case is about how Sebert used his authority to favor a group of young men in a discriminatory manner whereby females and particularly older females were discriminated against. In this respect, Hagen brought this case forward to correct the wrongdoing that occurred to her, and to ensure the culture that evolved into a "good ole boy" network of young men does not continue.

What this case comes down to for summary judgment is whether Sebert discriminated against Hagen when he demoted her from a High School Principal position to an Elementary School position and replaced her with a much younger male that was part of the "good ole boy" network Sebert created. In this regard, the evidence will show that the defendant's after-the-fact

attempt to convert Sebert's action as a performance-based issue is nothing more than an attempt to create a legitimate reason for Sebert's actions. However, the evidence proves this was not a performance-based decision and that Climate Surveys defendant now relies upon were not to be considered within performance evaluations. Moreover, the evidence shows Sebert had an extensive history of treating young men more favorably than female employees and in particular older females such as Hagen. As such, defendant's motion for summary judgment must be denied, and Hagen be given the opportunity to present her case to a jury.

<u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court may consider the depositions, answers to interrogatories, admissions, pleadings, and affidavits that are part of the record. <u>Bellaver v. Quanex Corp.</u>, 200 F.3d 485, 492 (7th Cir. 2000). In analyzing whether a question of fact exists for the purposes of summary judgment, the court construes the evidence in the light most favorable to the party opposing the motion. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

<u>ARGUMENT</u>

**I.    HAGEN WAS DISCRIMINATED BASED ON HER AGE AND GENDER.**

**A.  Facts**

Plaintiff, Michelle Hagen ("Hagen"), is a female who was age 54 when the defendant, Fond du Lac School District ("District") through its then Superintendent James Sebert ("Sebert") made the decision to demote her from the High School Principal position to Principal of Roberts

Elementary School on May 24, 2017. (PFOF 1, 42 & 72)[1]. In this respect, Sebert is a male more than 10 years younger than Hagen (approximately age 44 at the time), and the person he replaced Hagen with as High School Principal was Matt Steinbarth ("Steinbarth"), a male approximately age 42 at that time. (DFOF 4 & 10(l))[2].

In this respect, Hagen had no prior knowledge there was any possibility of being removed from the High School Principal position and was completely caught off guard by Sebert's decision. (PFOF 43 & 46). This surprise caused Hagen to ask Sebert why he was making this move to which Sebert would only say "it was a better fit". (PFOF 43 & 44). More specifically, Sebert did not connect the phrase "it was a better fit" to a performance-based issue. (PFOF 45).

Prior to making this unexplained and surprising announcement to Hagen, Sebert offered Steinbarth the High School Principal position without a posting process in or around April 13, 2017 even though Steinbarth had no High School administrator experience. (PFOF 27-29, 35 & 37). At around that same time on April 11, 2017, Sebert invited Steinbarth to become a member of the "lunch group" which included a group of three male District administrators and one male community member who would bet on sporting events with the loser buying lunch. (PFOF 25-26).

Hagen will now show that based on the totality of circumstances, the Sebert decision to replace her as High School Principal was age and gender discrimination.

**B. Methods to analyze age and gender discrimination claims**

This case involves a gender discrimination claim under Title VII and an age discrimination claim under the ADEA against the District. As the defendants acknowledge in reviewing these claims, whether the evidence would permit a reasonable factfinder to conclude the plaintiff's gender and/or other prescribed factor (age), caused the adverse action requires that the "[e]vidence

---

[1] PFOF references Plaintiff's Findings of Fact.
[2] DFOF references Defendant's Findings of Fact.

must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself or whether just the 'direct' evidence does so, or the 'indirect' evidence." Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 765 (7th Cir. 2016).

As such, a district court must not limit its analysis to the *McDonnell Douglas* framework or to treat some evidence as relevant to the *McDonnell Douglas* analysis but not to the broader question of whether a reasonable factfinder could conclude plaintiff's race caused the adverse employment action. Pearson v. Illinois Bell Telephone Co., 2016 WL 7374235, at \*6 (N.D. Ill. 2016); *citing,* Ortiz, 834 F.3d at 765. Therefore, if the evidence does not fit the *McDonnell Douglas* framework, the court will consider the evidence as a whole to determine whether a reasonable factfinder could conclude plaintiff was discriminated against. Id.; *citing,* Cole v. Bd. of Trs. of N. Ill. Univ., 838 F.3d 888, 899 (7th Cir. 2016); Ortiz, 834 F.3d at 765. Therefore, plaintiff can prove his case under the indirect method known as the *McDonnell Douglas* framework or can articulate a reasonable alternative explanation to show the alternative explanation is pretext. Cole, 838 F.3d at 899; Ortiz, 834 F. 3d at 765. In this respect, the District did not address anything other than a indirect evidence analysis, but plaintiff will first present a review of the evidence as a whole for her gender and age discrimination claims, and will then address the District's argument as to the *McDonnell Douglas* argument to show Hagen's claim survives summary judgment under that framework as well.

**C. A reasonable factfinder can conclude discrimination occurred based on the evidence as a whole.**

As pointed out by the District, on Hagen's age claim she must show that "but for" her age the District would not have demoted her from the High School Principal position to the Principal of Roberts Elementary School. Martino v. MCI Communications Services, Inc., 574 F.3d 447, 455 (7th Cir. 2009). In contrast, as for Hagen's gender claim she only need to show that her gender was a "motivating factor" in the District's decision to demote her. Lust v. Sealy, Inc., 277 F.

4

Supp.2d 973, 980 (W.D. Wis. 2003). In this respect, the evidence as a whole will show that at a minimum Sebert as the District's Superintendent was motivated to demote Hagen due to her gender.

**Same Actor Inference**

To begin with, the District's reliance on the same actor inference as a basis for a dismissal of Hagen's claim works against them. In making this argument, the District relies on case law that when the same person (Sebert) both hired and then demoted the individual (Hagen), there is an inference the demotion was not the result of an improper motive. Martino, 574 F.3d at 454-455. However, the District ignores that such a presumption is simply evidence and should not be accorded any presumptive value as it is the jury's function to determine whether that is the case. Id., at 455; citing, Petts v. Rockledge Furniture, LLC., 534 F.3d 715, 724-25 (7th Cir. 2008); Filar v. Bd. of Educ. of City of Chicago, 526 F.3d 1054, 1065 n. 4 (7th Cir. 2008). In other words, this is only one piece of evidence for consideration.

Moreover, a review of the facts surrounding this factor works in Hagen's favor as opposed to eliminating any improper motive by Sebert. More specifically, Hagen came to the District after working 23 years with the Milwaukee Public Schools ("MPS") where she had experience as an assistant principal of an elementary school, together with an assistant principal and principal of a K-8 school. (PFOF 2). When Hagen applied for the High School Assistant Principal position in 2013, and there were 70 candidates competing for the position. The interview committee recommended Hagen for the position, and based on their recommendation Sebert made the decision to hire Hagen. (PFOF 3-5). One year later in advance of the 2014-2015 school year, the High School Principal position which was the most visible and potentially impactful principal role in the District became open when the High School Principal announced he was resigning. (PFOF

8; DFOF 27). As a result, the High School Principal position was posted whereby candidates would be screened by Ms. Simon the District's Human Resource Director ("Simon"), then interviewed by an interview team and ultimately selected by Sebert. (PFOF 6, 9 & 13-15). At that same time, Hagen also applied for the Lakeshore Elementary School Principal position and was interviewed for both the High School and Lakeshore Elementary School Principal positions. (PFOF 6 & 11-12). In the end, Hagen was the only person called back for a second interview for the High School Principal position which had 21 applicants. (PFOF 10 & 13). It was after the second interview, Sebert called Hagen and offered her the position and when he did so, Hagen asked, "Well what about Lakeshore?" to which Sebert responded "Lakeshore's a school that can run itself. I need you at the High School." (PFOF 14). More specifically, the High School was the most visible principal position in the District and was experiencing climate culture issues which needed to be improved. (PFOF 7-8).

In making this decision, Sebert indicated he chose Hagen for the High School Principal position because in her one year as Assistant Principal at the High School she was successful in building relationships and the culture of the high school needed attention. (PFOF 15). In comparison, Lakeshore Elementary was a Blue-Ribbon school with low levels of diversity and an affluent student body. (PFOF 49; Response to DFOF 114)[3]. As such, a panel determined Hagen was the person to be the High School Principal and Sebert confirmed that choice.

In comparison, at that same time, the interview team for the Lakeshore Elementary school principal position did not choose Steinbarth, but instead chose Barbara Dorn, a female, for the position. (PFOF 17). Yet, Sebert chose Steinbarth (a male) for that position even though he only had one total year of administrative experience. (PFOF 16-17). In short, Sebert was the same actor

---

[3] Response to DFOF refers to Plaintiff's Response to Defendant's Finding of Fact.

6

that hired Steinbarth for the Lakeshore Elementary School Principal position in 2014 over a female (Barbara Dorn) against the panel's recommendation, and then later replaced Hagen, an older female, with Steinbarth without any kind of an interview or posting process which is the first time Simon can recall ever happening at the District. (PFOF 28 & 35-36, 51). This occurred even though Steinbarth had no administrative experience at the High School level and Hagen was in her fourth year of High School administrative experience with the District. (PFOF 37).

**Lunch Club**

Sebert was also the same actor that organized a group of men to bet on sporting events whereby the loser bought the rest of the group lunch. (PFOF 25). This lunch group consisted of men all younger than Sebert that included two other District administrators and a community member but did not include any females. (PFOF 25-26). One of those administrators was the Athletic Director, Dave Michalkiewcz, and the other was Don Smith, the STEM School Principal. (PFOF 26). When Sebert asked Steinbarth in the spring of 2017 if he'd be interested in becoming High School Principal, he also invited Steinbarth to join this lunch group. (PFOF 25-27). Sebert gave preference to the young men in this group. In essence, this was a group of "good ole boys" that formed a club wherein connections and concessions were made at power lunches based on similar interests involving sporting events whereby women were excluded not only socially, but in the work environment as well.

For instance, Sebert performed the personal evaluation of Dave Michalkiewicz, the athletic director, despite Michalkiewicz working at the high school who was to be evaluated by the High School Principal. (PFOF 60-61). In contrast, Sebert allowed Hagen to evaluate the fine arts director for the District who was a female. (PFOF 62). Moreover, Sebert showed favoritism in evaluating Michalkiewicz in that he submitted the same evidence for his Documentation Log as did Hagen

but each received different ratings from Sebert on the same evidence with no explanation for the different scores. (PFOF 75). Further, when Sebert left the District and Simon became acting superintendent, the High School Principal evaluated Michalkiewcz. (PFOF 61).

As for Don Smith, he was allowed to have an affair with a teacher he supervised that would have caused a termination for a rule violation. (PFOF 69). Instead, he received a big raise. (Id). Moreover, when the Lakeshore Elementary Principal position became open with Steinbarth going to the High School, Sebert decided to give the position to the teacher Smith was having the affair with who had no prior administrative experience. (PFOF 70). In fact, it was clear to Torrie Rochon-Luft a female and Principal at Sabish Middle School that Smith received favorable treatment from Sebert. (PFOF 63 & 67). Further, Sebert promoted (reassigned/transferred) Smith from a middle school assistant principal position to the STEM school principal position in 2013 without an interview. (PFOF 67; DFOF 10 (g)).

As for Steinbarth, Sebert selected him over Barbara Dorn in 2014 for the Lakeshore Elementary Principal position even though the interview team recommended Dorn for the position. (PFOF 17). Further, in early April 2017 when Sebert asked Steinbarth to join the lunch group, he also asked him if he would be interested in being the High School Principal. (PFOF 25 & 27). Sebert did so without undertaking a posting process making it his sole decision without even notifying two key cabinet persons, the Director of Curriculum, Danica Lewis or the Human Resource Director, Sharon Simon. (PFOF 28-30, 32 & 34-36). Moreover, neither Lewis or Simon were told why a change at the High School should occur nor why Steinbarth was right for the job. (PFOF 32 & 34-36). This decision was Sebert's and Sebert's alone. (PFOF 28).

In addition, when Steinbarth accepted the High School Principal position he was treated favorably in comparison to how Hagen was treated. More specifically, Sebert told Hagen she

could not make more money than Simon as Simon was on his cabinet. (PFOF 54). In contrast, Steinbarth chose the highest salary he could get for High School Principal, and it was eventually agreed Steinbarth would make $115,000 which was more than what Simon was making. (PFOF 52-53).

Moreover, during Steinbarth's first year as High School Principal he was allowed to submit his goals after the required deadline and was still rated as "distinguished." (PFOF 59 & 88). Again Rochon-Luft identified Steinbarth as a male receiving favored treatment from Sebert. (PFOF 67).

**Sebert's Favorable Treatment of Men**

In addition to treating the "lunch group" more favorably than females, Sebert was known to treat men more favorably than females. (PFOF 67). For instance, Sebert allowed John Colwin the opportunity to finish his career with the District by giving him the option to move from the Principal position at Pier Elementary School to the Assistant Principal position at Sabish Middle School. (Response to DFOF 125). In this respect, Colwin was grateful, and Rochon-Luft noticed Colwin was allowed to get away with anything short of murder that any other person would be fired for. (Id). Moreover, when Colwin worked for Rochon-Luft, she notified Sebert of Colwin attempting to enter a student's house through the garage only to have Sebert tell her to keep her mouth shut. (PFOF 68).

Likewise, Tim Scottberg who was an Assistant Principal for Hagen, and someone she gave a "needs improvement" rating to for failing to do his work was promoted by Sebert to Principal at the STEM School. (PFOF 71; DFOF 119; Response to DFOF 121). In this respect, Sebert claims he did not know of the "needs improvement" rating which was based on inadequate response times, but when he provided Hagen's evaluation in June 2016, the only information he had on response times was information that included Scottberg's numbers. (Response to DFOF 123). Moreover,

after Hagen's contract was changed to a 211-day contract for the 2018-2019 school year, Scottberg who was also on a 211-day contract as Principal at the STEM School earned more money than Hagen did. (PFOF 89).

Additionally, Tim Schipper the Principal at Riverside Elementary was promoted (reassigned/transferred) by Sebert to be the Principal of Woodworth Middle School in 2018. (PFOF 78; DFOF 10 (o)).    Sebert made this promotion despite the fact when Schipper was at Riverside Elementary it was identified by the Department of Public Instruction (DPI) as a Focus School due to the fact it was not performing up to standards as identified by the State.  (PFOF 76). In comparison, when Hagen was Principal at the High School it was never identified by the State as a failing school.  (PFOF 77).  Yet, Hagen was demoted and Schipper, a male, was promoted.  In short, Sebert had a habit of favoring men over females.

### Not a performance-based demotion

The District argues that Sebert's decision to demote Hagen from High School Principal to the Principal at Roberts Elementary School starting with the 2017-2018 school year was a performance-based decision.  However, this was not the stated reason given to Hagen when Sebert made this decision.  In this respect, if the stated reason was not the actual one, it is a pretext even if it had some basis in fact that might have induced some employers to take the adverse action taken against the plaintiff.  Forrester v. Rauland-Borg Corp., 453 F.3d 416, 419 (7th Cir. 2006). As such, the District's attempt to establish poor performance after-the-fact fails as a matter of law.

A review of the facts shows that during Hagen's first year as High School Principal Sebert provided her with an overall rating of "effective" and two categories as "distinguished" including the School Climate.  (PFOF 18).  Then in Hagen's second year at the High School Sebert again gave her an overall rating of "effective".  (PFOF 19).  However, he did rate three categories as

"developing/needs improvement" including School Climate which in the previous year he rated as 'distinguished'. (Id). As a result, Sebert asked Hagen to write a plan by August 15, 2016 to set goals for growth. (PFOF 20). As such, Hagen submitted a "Strategies for Growth" plan which was not considered a performance improvement plan. (PFOF 21 & 63-65). During the 2016-2017 school year, Sebert and Simon would meet with Hagen monthly to discuss Hagen's progress on the "Strategies for Growth." (PFOF 22). During those monthly meetings, Hagen was never given any notice by Sebert there was a problem, nor was she provided with any suggestions or recommendations or told any change(s) needed to take place. (PFOF 83). In fact, Simon did not know there was going to be a change at the High School until Sebert told her he offered the position to Steinbarth. (PFOF 34). This is not supportive of any lack of performance that would result in a demotion.

Furthermore, Rochon-Luft who was also asked to develop a plan for areas of growth had a similar experience as Sebert met with her each month, but never provided her assistance or coaching nor sent her any support for training and would only say she was doing great. (PFOF 66). Yet, Rochon-Luft felt that being asked to develop a plan for growth without evidence was taking away her voice as a female. (PFOF 64). Additionally, contrary to the District's position, Rochon-Luft never had the impression there was a climate/cultural problem at the High School when Hagen was there and the Climate Surveys were not to be used as part of the evaluation process. (PFOF 73, 79).

Further, Danica Lewis the Director of Curriculum would visit all principals with Sebert about every six weeks including Hagen. (PFOF 23). In this respect, Lewis was asked by Sebert to support Hagen and her Assistant Principals to help them build their capacity to lead, and recalls Hagen attended an annual conference along with close to 1,000 other attendees that the District had held

annually for a number of years that covered standards with broad topics. (PFOF 31). However, Lewis did not recall ever telling Hagen she was in danger of being removed as High School Principal or that any specific team leader had issue with her. (PFOF 33). Moreover, when Sebert told Lewis he was offering the High School Principal position to Steinbarth he did not explain why the change should occur nor any explanation why Steinbarth was the right solution. (PFOF 32). Additionally, Steinbarth was never told what would happen to Hagen or with the High School Principal position if he didn't accept the offer. (PFOF 38). Furthermore, Sebert had no plans to tell Hagen about his decision to move Steinbarth to the High School Principal position until May. (PFOF 39). Again, if Sebert had any issue with Hagen's performance one would believe Simon, Lewis, Steinbarth and Hagen would have all known about it, and Sebert would have been in more of a hurry to make this change.

Instead, when Steinbarth accepted the offer, Sebert waited until May 24th to meet with Hagen and began the meeting by thanking her for her work on the transgender bathroom issues, and congratulated her remarkable progress on Student Learning Objectives before stating, "Roberts needs a principal, and I am reassigning you there." (PFOF 42). The evidence clearly shows that Hagen was completely caught off guard without any prior knowledge this was even a possibility. (PFOF 43).

As such, Hagen asked Sebert "why" to which Sebert would only say "it was a better fit" but never explained why. (PFOF 43-44, 47). Moreover, Simon who witnessed this could not recall if Sebert ever explained what he meant by "a better fit" but confirmed Sebert did not say it was for a performance-based issue. (PFOF 45). Moreover, Sebert confirmed Hagen was never put on notice she was going to be moved to an elementary school. (PFOF 46). As such, this was not a performance-based move as argued by the District. Rather, it is the District attempting to create a

performance-based argument to justify Sebert's actions "after-the-fact" as no one had ever been reassigned from the High School Principal position to an Elementary Principal position during Simon's employment with the District back to 1989. (PFOF 51). Moreover, it contradicts Sebert's final evaluation of Hagen as High School Principal in which he provided her an overall rating of "effective". (PFOF 84). Had Hagen really had a performance-based issue at the time of her demotion, she would have been fully aware of it, Sebert would have detailed that, and Simon and Lewis would have known about it. Yet, that was not the case. Rather, Hagen first learned of the District claiming it was a performance-based issue when the District filed its response to her claim with the EEOC in which they also tried to claim there was a recruitment process to fill the High School Principal position to replace Hagen and that she did not attempt to negotiate a higher salary when being made High School Principal. (PFOF 92-93). All of which was contradicted by deposition testimony. (PFOF 35-36 & 54). Again, the District's after-the-fact arguments only prove pretext. Forrester, 453 F.3d at 419. As such, summary judgment cannot be granted.

Moreover, the arguments made by the District to create an after-the-fact performance-based issue also fail. They first argue Hagen failed to improve school climate and rely upon the Climate Surveys that showed the High School had the lowest performing score of all schools in the District. To begin with, the District ignores that the Climate Surveys were not to be part of the evaluation process and do not reflect the performance of administrators. (PFOF 79). Further, the evaluations performed by Sebert do not provide any evidence to justify how Hagen's 'distinguished' score in this category in her 2014-2015 evaluation would drop to "needs improvement" in her 2015-2016 evaluation nor was that matter even discussed by Sebert in June 2016 when Sebert provided Hagen her 2015-2016 evaluation. (PFOF 81-82). However, after Hagen was removed from the High School Principal position by Steinbarth, she did notice the climate survey results were changed to

allow for both "strongly agree" and "agree" responses whereas when Hagen was High School Principal the surveys were based only upon "strongly agree" responses. (PFOF 80).

Additionally, Sebert provided Hagen an overall "effective" rating on her 2016-2017 evaluation proving she was doing an "effective" job during the year Sebert decided to demote her to an elementary school principal. (PFOF 84). Furthermore, after Hagen became the Roberts Elementary School Principal, she was not required to write a plan for growth and the monthly meetings with Sebert and Simon did not continue. (PFOF 87). As such, if Hagen really had issues, one would think the plan for growth would have continued as she was deficient in skills that needed to be improved, but clearly that was not the case.

Furthermore, if Hagen was such a bad employee as the District indicates, one has to consider why she was not provided the Lakeshore Elementary Principal position, but was sent to Roberts Elementary. In that regard, Evans Elementary, Roberts Elementary and Lakeshore Elementary School Principal positions were all open after Sebert decided to replace Hagen with Steinbarth as High School Principal. (PFOF 24 & 48). Both Roberts and Evans had been open since the end of March. (PFOF 24). In this respect, Simon did not know why Hagen was not offered the Lakeshore Elementary School position. (PFOF 50). Yet, Lakeshore was a posted position from which Sebert eventually chose Don Smith's wife who had no prior administrative experience to be Lakeshore's new principal. (PFOF 70). In contrast, Hagen who supposedly had poor performance on the climate survey was sent to the school with lower climate survey results than Lakeshore. (Wistrom Decl. at Ex. Y, Hagen Dep. Ex. 39). Again, showing Lakeshore was a school that could run itself as Sebert apparently needed Hagen at Roberts Elementary in comparison. In any event, this also proves that Hagen did not have the performance issue the District now claims she had that caused her demotion.

14

Likewise, the District's attempt to create an after-the-fact argument that response times for student, parent and teacher issues at the High School was way too slow by being 13 days again only shows pretext. More specifically, Sebert did not even know of this being an issue until the fall of 2016 when the High School administration team decided to use turnaround time on referrals for a Student Learning Objective. (Response to DFOF 65). In this regard, Sebert admitted he would not have received this information until Hagen provided it to him with the 2016-2017 Student Learning Objective. (Response to DFOF 64). Further, Hagen did not do referrals as Principal as that was the Assistant Principal's responsibility (Scottberg who Sebert promoted to Principal of the STEM School in 2018) and was the main reason the High School had such a slow response time. (Response to DFOF 65; PFOF 71). Again, another argument made by the District that proves pretext.

Likewise, the District's argument that Hagen was provided assistance by being sent to a FIRST Conference and that Dr. Warrick was brought in to help Hagen is pretext as is the argument that Lewis was asked to assist Hagen in professional growth. To begin with, the FIRST Conference was not targeted for Hagen, but was an annual conference approximately 1,000 educators attended that focused on standards with broad categories. (PFOF 31; Response to DFOF 77). Likewise, any training with Dr. Warrick was also provided to Steinbarth, Sebert and Lewis. (Response to DFOF 77). Further, any support Lewis would have provided to the High School administration was to the full administrative team and any support Lewis provided for the entire administrative team and not just Hagen. (Response to DFOF 78 & 81). Additionally, the District tries to ignore that Lewis and Sebert met with every Principal in the District to provide support every six weeks, not just Hagen. (PFOF 23). Moreover, contrary to the District's position, Sebert also asked Lewis to assist with Riverside Elementary School when they were identified as a Focus School by DPI.

15

(Response to DFOF 81).  Something the High School was never identified as being.  (PFOF 77).  Yet, the Principal of Riverside was promoted by Sebert from Riverside Elementary School to Woodworth Middle School in 2018.  (PFOF 78).

Finally, the District argues that Sebert specifically spoke about concerns he had and indicated that improvement in those areas was not happening as fast as he wanted to see. To begin with, Simon who also sat in on this meeting could not recall such statements and neither did Hagen. (PFOF 43-45).  However, Hagen did recall Sebert walking to his desk during the May 24th meeting after being asked by her several times why he was making this move to which Sebert stated, "it's not moving fast enough for me", but there was no indication as to what that meant.  (Response to DFOF 105).  Further, Sebert even called Hagen on May 30th to tell her that he hoped she didn't see this move as him forcing her out or that it was disciplinary and again stated "it's a better fit" and hoped she thought so too.  (PFOF 86).  In short, if Sebert thought Hagen was not fulfilling some unidentified obligation fast enough, this evidence shows otherwise and is an after-the-fact argument. In short, Sebert's comment on "it's not moving fast enough for me" could have referred to the meeting was not happening fast enough for Sebert's liking as Hagen's demand to know why the move was occurring could not be explained.

Moreover, as a matter of law the defendant's reason must be clear and reasonably specific. Chapman v. AI Transport, 229 F. 3d 1012, 1034 (11th Cir. 2000).  As such, it may not be sufficient for an employer to say they did not hire someone because they did not like that person's appearance without further explanation. Id. However, a comment such as I did not like that person's appearance because they did not comb their hair, had dandruff, and a pierced nosed with dirty fingernails would be clear and specific.  Id.  In our case, not only was the reason for the transfer being "it's a better fit" insufficient as an explanation, but so is the District's attempt to tie in the

statement "it's not moving fast enough for me." In any event the District's arguments Hagen's transfer was based on performance (which was not the reason provided on May 24, 2017) fall short of being believable and are pretext. Simply put, summary judgment can't be granted.

### High School Principal to Elementary School Principal is a Demotion

The District also tries to argue that the move from a High School Principal position to an Elementary School Principal position is not an adverse action as Hagen remained a Principal and her "per diem" pay remained the same. As a matter of law, a demotion is evidenced by a decrease in wage or salary, a less distinguished title, a loss of material benefits, significantly diminished responsibilities or other indices that might be unique to a particular situation. Crady v. Liberty National Bank and Trust Company of Indiana, 993 F.3d 132, 136 (7th Cir. 1993).

To bolster this argument, the District relies on an unpublished decision and upon Salmon v. West Clark Community Schools, 64 F.Supp.2d 850 (S.D. Ind. 1999). However, a closer read of Salmon merely shows the plaintiff claimed she lost money as a result of being transferred from a middle school teacher position to an elementary school teacher and failed to present evidence to support her statement that this transfer involved a significant loss of prestige and perhaps long-term prospects of advancement. Salmon, 64 F.Supp.2d at 867-868. In addition, the Salmon court indicated had the plaintiff presented evidence the assignment was deemed a demotion as being a less distinguished position within the teaching community or that she received less salary or benefits, they would have found an adverse action. Id., at 868.

Contrary to the District's argument, the evidence presented in this case shows that the High School Principal position is the most visible and potentially impactful principal role in the District. (PFOF 8). Moreover, Rochon-Luft who was a Middle School Principal in the District stated that such a move was a demotion as there is prestige in being the High School Principal and every

administrator in the District would feel a move from the High School Principal position to an Elementary School Principal position would be a demotion. (PFOF 72). Moreover, whether a particular reassignment is materially adverse depends upon the circumstances of the particular case and should be judged from the perspective of a reasonable person in plaintiff's position, considering all circumstances. Deleon v. Kalamazoo County Road Commission, 739 F.3d 914, 919 (6th Cir. 2014). As already mentioned, Rochon-Luft who has no interest in the outcome of this case and was a Principal within the District when this demotion occurred recognized it as a demotion. (PFOF 72). Moreover, Sebert, Simon and the District through admissions in its Answer in this case agree the High School Principal position is the most visible and potentially impactful principal role in the District. (PFOF 8). To now argue otherwise is pretext.

Further, this argument ignores that the move caused Hagen to be hospitalized from May 24-26, 2017 and admitted into intensive care where she received last rites from her priest due to the health issues caused by the stress this demotion caused her. (PFOF 85). In fact, Sebert's telephone call to Hagen on May 30th to tell her that hoped she didn't see this move as him forcing her out or that it was disciplinary, and hoped she thought so too also proves Sebert could understand a reasonable person would see this move as a demotion. (PFOF 86). To say the High School Principal position is not more prestigious as an Elementary School Principal position or that Hagen's growth potential was not stunted by this move ignores the circumstances and facts presented.

Moreover, the District ignores that Hagen was notified that once her 2017-2018 contract ended, she would be placed on a 211-day contract which elementary principals worked under as opposed to a 260-day contract she was on as a High School principal. (PFOF 56-57). This resulted in Hagen's annual salary dropping by about $19,000 per year beginning with the 2018-2019 contract

she worked under during her final year of employment with the District. (Id). Further, the District ignores that the cut in annual salary by $19,000 also cut the contributions made to Hagen's retirement system and to social security thereby adversely effecting her benefits. (Wistrom Aff. at Ex. E, Niendorf Report). In short, Hagen went from the highest paid Principal in the District in 2016-2017 to a point in 2018-2019 where she was not even the highest paid principal on a 211-day contract as Scottberg and Catherine Daniels earned more than Hagen. (PFOF 74 & 89). Moreover, it ignores that the District admitted that Steinbarth's $29,295 pay increase when placed into the High School Principal position was tied to a promotion. (PFOF 91). To say that going from an elementary school principal position to a High School Principal position is a promotion, but a move from the High School Principal position to an Elementary School Principal position is not a demotion, ignores reality. As such, the circumstances support an adverse action occurred as Hagen was demoted.

As to the District's final argument that Hagen may not claim a loss of pay as that occurred six months after she filed her EEOC claim against the District lacks merit. More specifically, a plaintiff may only bring those claims included in her EEOC charge, or that are "like or reasonably related to the allegations of the charge growing out of such allegations." Geldon v. South Milwaukee School Dist., 414 F.3d 817, 819 (7th Cir. 2005). In this respect, Hagen's EEOC claim clearly lists she was transferred to a less desirable position and was being paid less than the new High School Principal. (Wistrom Decl. at Ex. A). Further, a cut in pay in going to a less desirable position from the High School Principal position was an allegation reasonably related to the charge and allegations made. That is because when Hagen was moved from the High School Principal position and told she was going to Roberts Elementary School as Principal, she would remain on her current 260-day contract through the 2017-2018 school year, but then beginning with the 2018-

19

2019 contract, she would be placed on the 211-day contract consistent with all other elementary principals. (PFOF 56). Clearly, any cut in pay as a result of going to this less desirable position was reasonably related to the allegations made. As such, the District's attempt to eliminate the loss of pay as part of this adverse action must be denied as well.

**D. *McDonnell Douglas* Review of Age Discrimination.**

In addition to considering the evidence as a whole, the *McDonnell Douglas* test can also be used to determine if age discrimination occurred. More specifically, to establish a *prima facie* case of age discrimination the parties agree Hagen must show:

1. she belongs to a protected class,
2. she performed reasonably on the job in accord with her employer's legitimate expectations,
3. despite her reasonable performance she was subjected to an adverse employment action, and
4. the defendant treated similarly situated younger employees more favorably.

Martino, 574 F.3d at 453.

In this respect, the District only concedes that Hagen was over the age of 40 and thereby in the protected class. Further, the District argues Hagen must prove "but for" her age, she would not have been demoted from the High School Principal position to the Roberts School Elementary Principal position. In addition, the District argues that Hagen cannot show she was performing her job up to their legitimate expectations, she cannot show she was subjected to an adverse action and/or cannot show similarly situated employees significantly younger than her were treated more favorably than her.

As for the response that Hagen was performing her job up to the District's legitimate expectations, one need go no further than the fact she received an overall performance evaluation rating of "effective" at the time of her demotion in 2017. (PFOF 84). Moreover, when she was told of the demotion from High School Principal to Roberts Elementary School Principal, she was

not told it was for a performance-based issue, but only "it was a better fit." (PFOF 42-45). Further, as already argued and set forth in detail by Hagen under the "Not a Performance Based Demotion" portion of this brief, there were many reasons why Hagen was meeting her employer's legitimate expectations.

Likewise, Hagen will not repeat why she suffered an adverse action as that has already been expressed in detail under the heading "High School Principal to Elementary School Principal is a Demotion." Further, any claim that Sebert being the same person who decided to hire Hagen as High School Principal three years earlier and then demoted her removes all implication he would discriminate has also been previously addressed by Hagen, and will not be repeated again.

As such, Hagen will show that a similarly situated significantly younger person was treated better than she was. In this case, any person more than 10 years younger than Hagen qualifies as a significantly younger person. Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 893 (7th Cir. 1997). In this respect, the comparison Hagen will use is Steinbarth who replaced her as High School Principal and was well over 10 years younger than Hagen. (DFOF 10 (l) (m)). In addition, Steinbarth had the same supervisor as did Hagen in Sebert, they were subject to the same District standards and engaged in similar work making them similar as a matter of law. Coleman v. Donahoe, 667 F.3d 835, 847 (7th Cir. 2012).

The District argues Hagen cannot be considered similar to Steinbarth as he performed at high levels as the Principal of Lakeshore Elementary in comparison to Hagen who had marks of "Developing" or "Needs Improvement". Again, this argument ignores that Hagen had an overall evaluation rating of "Effective" and the reason for the move had nothing to do with performance but supposedly because "it was a better fit." (PFOF 42-45). Further, the District ignores that when Steinbarth took over the Lakeshore Elementary Principal position, Lakeshore was a Blue-Ribbon

21

school made up of low diversity, affluent student body and could run itself. (PFOF 14 & 49; Response to DFOF 114). In comparison, Hagen was faced with the most visible and potentially impactful principal position in the District wherein climate culture issues already existed. (PFOF 7-8). Moreover, the District ignores that as a matter of law, employers do not generally select less qualified candidates unless there is some other strong consideration or discrimination. Fields v. Vilsack, 798 F.Supp.2d 82, 87 (D.C. 2011). Based on the evidence presented, there is no other strong consideration for Sebert to have replaced Hagen with Steinbarth (a significantly younger male), but for subjective and vague unidentified reasons. More specifically, Steinbarth did not have any administrative experience at the High School level in comparison to Hagen who was in her fourth year of High School administrative experience. (PFOF 37). Further, Simon could not explain what Sebert meant by a "better fit" and Sebert never explained that either. (PFOF 42-45). Moreover, the District's reasons for having taken this action on a performance-based issue clearly shows pretext as previously described under the "Not a Performance Based Demotion" portion of this brief. As such, a jury could conclude "but for" Hagen's age in comparison to the significantly younger male Steinbarth, this move would not have occurred. Simply put, this is a matter to be considered by a jury.

### E. *McDonnell Douglas* **Review of Gender Discrimination.**

To establish a *prima facie* case of gender discrimination under the *McDonnell Douglas* test the parties agree Hagen must show:

1. she belongs to a protected class,
2. her job performance met the employer's legitimate expectations,
3. she suffered an adverse employment action, and
4. another similarly situated individual who was not in the protected class was treated more favorably than plaintiff.

Coleman v. Donahoe, 667 F.3d 835, 845 (7th Cir. 2012).

As already argued by Hagen in the *McDonnell Douglas* analysis for age discrimination the same issues exist for a gender discrimination *McDonnell Douglas* analysis. More specifically, the District claims Hagen was not meeting their legitimate expectations, she did not suffer an adverse action and no male received more favorable treatment than she received. In that respect, as set forth in the age discrimination analysis, Hagen will not again repeat her position on those matters except to reiterate she has shown throughout that she was meeting the District's legitimate expectations and did suffer an adverse action. As such, that again leaves Hagen the burden to show that males were treated more favorably than her.

To begin with, "[w]hether a comparator is similarly situated is 'usually a question for the fact-finder,' and summary judgment is appropriate only when 'no reasonable fact-finder could find that plaintiffs have met their burden on this issue.'" Coleman, 667 F.3d at 846. In this respect, there must be enough common factors to allow for a meaningful comparison to divine whether intentional discrimination was at play and the number of relevant factors depends on the context of the case. Id., at 847. In this respect, there is no "magic formula", but having the same supervisor, subject to the same conduct and engaging in similar conduct will meet the standard. Id. Steinbarth had the same supervisor in Sebert, was subject to the same conduct and engaged in similar conduct as already argued in the age discrimination analysis. Further, as already argued in this brief, Steinbarth was a member of the "good ole boy" lunch group which shows he was treated more favorably than Hagen. More specifically, Steinbarth was invited into the lunch group, comprised of a group of young men who bet on sporting events with the loser buying lunch at the time he was offered the High School Principal position. (PFOF 25-26). Additionally, Sebert had previously selected Steinbarth to be the Lakeshore Elementary School Principal over a female who was recommended by the interview team for that position. (PFOF 17). Similarly, Sebert asked

Steinbarth to be the High School Principal without the position being open and did so without requiring him to undertake a posting/interview process as Sebert made this decision solely on his own. (PFOF 28-30, 32 & 34-36). In addition, Sebert allowed Steinbarth to make more money in the High School Principal position than Simon (female) who was on his cabinet although prohibiting Hagen (female) from doing the same when she was High School Principal. (PFOF 52-54). Simply put, Steinbarth being a male was a factor in Sebert's decisions as was Sebert's favoritism with the other men in the lunch group as described under the heading "Lunch Group" in this brief. At the least, Hagen has shown background circumstances that demonstrate Sebert has a reason or inclination to discriminate invidiously against females or evidence that there is something "fishy" about the facts at hand. Phelan v. City of Chicago, 347 F.3d 679, 684 (7th Cir. 2003). Evidence of "fishiness" could include facts that the men selected were not as qualified as the female making the claim. Preston v. Wisconsin Health Fund, 397 F.3d 539, 542 (7th Cir. 2005). As stated, Hagen was not moved for performance reasons, and Steinbarth did not have any administrative experience on the High School level whereas Hagen was in her 4th year of High School administrative experience.

Additionally, Sebert provided more favored treatment to John Colwin (male) in comparison to Hagen. In this respect, Colwin was provided the opportunity from Sebert to leave a Principal position and accept an Assistant Principal position to finish his career with the District which he was happy to do. (Response to DFOF 125). In fact, Colwin was grateful for this offer, and Rochon-Luft noticed Colwin was allowed to get away with murder that any other person would be fired for. (Id.) In comparison, Sebert with no reason to move Hagen other than a vague "it's a better fit" moved her from the most prestigious principal position to an elementary school principal position. To say, Colwin a male did not get favored treatment over Hagen under these

circumstances misses the point Colwin was subject to termination but remained in an administrative position while Hagen who was meeting legitimate standards was moved because "it was a better fit" for "a man" to be the High School Principal.

Further, Tim Scottberg (male) who was responsible for the slow response time at the High School for which Hagen received a "needs improvement" rating from Sebert in her 2015-2016 evaluation was promoted by Sebert to the STEM School Principal position. (PFOF 71; Response to DFOF 121 & 123-124). In comparison, Hagen who was not responsible for the response time was asked to make a plan for growth by Sebert. (PFOF 19 & 71; Response to DFOF 123). In much the same way as Sebert asked Rochon-Lufton to make a growth plan which she felt took her voice as a female away. (PFOF 63-65). Moreover, Scottberg was making more money than Hagen when they were both on 211-day contracts. (Response to DFOF 124).

Likewise, Tim Schipper (male) the Principal at Riverside Elementary School was promoted by Sebert to the Principal of Woodworth Middle School even though while principal at Riverside the Department of Public Instruction identified Riverside as a Focus School not performing up to the standards of the State. (PFOF 76 & 78; DFOF 10 (o)). In comparison, the High School was never identified by the State as an underperforming school while Hagen was its principal. (PFOF 77). Yet, Schipper received favored treatment as he was promoted while Hagen who was meeting legitimate standards was demoted. As such, Hagen has presented evidence that a fact-finder could rely upon to find she has met her burden thereby requiring a denial of summary judgment.

## II.    PLAINTIFF HAS A WAGE LOSS

The District is correct in stating that Hagen may only bring claims that are included in her EEOC charge, or that are like or reasonably related to the allegations of the charges and growing out of such allegations. Geldon v. South Milwaukee School Dist., 414 F.3d 817, 819 (7th Cir.

2005).  However, a Title VII plaintiff need not allege in an EEOC charge every fact that forms a basis for their claim and are given significant leeway to assert claims reasonably related to the allegations of the charges.  Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994).  In this respect, the Seventh Circuit has stated that when a plaintiff does not state their decision to stop working was based on discrimination, the charge does not support a constructive discharge.  Herron v. Daimler Chrysler Corp.., 388 F.3d 293, 303 n. 2 (7th Cir. 2004).

However, once a plaintiff has established that she was discriminated against, she is entitled to full relief subject to the defendant's ability to demonstrate she did not mitigate her damages. Gaddy v. Abex Corp., 884 F.2d 312, 318 (7th Cir. 1989).  In this case, Hagen alleged in her EEOC charge that she had been paid less than the new High School Principal the District replaced her with and that she was transferred to a less desirable position in violation of Title VII due to her sex, together with an age discrimination claim.  (Wistrom Decl. at Ex. A).  This claim was filed on December 7, 2017.  (Id)  In Hagen's complaint filed herein, it is alleged that because of the discriminatory reassignment, Hagen suffered a loss together with a future reduction of over $19,000 per year together with emotional distress, punitive damages, loss of future wages and benefits and loss of job opportunity, together with attorney fees, disbursements and costs as allowed for by law.  (Id., at Ex. C).

In this respect, Hagen incurred a loss of wages during the 2017-2018 school year (first year as Roberts Elementary Principal) even though she maintained her same pay of $109,086 because Steinbarth was paid $115,000.  (PFOF 53, 55-56).  More specifically, Hagen was told by Sebert that her salary could not exceed Simon's salary as Simon was on his cabinet, but then allowed Steinbarth to receive $115,000 for the 2017-2018 school year even though that salary exceeded Simon's.  (PFOF 52-54).  As such, for that first year Hagen incurred a discriminatory wage loss

of roughly $5,914 which also meant she incurred a loss to the contributions that would be made to her social security and pension. (Wistrom Decl. at Ex. E). Moreover, Hagen claims she was discriminated against in her pay as High School Principal going back to 2014 and should receive the percent of wage over Simon's pay that Steinbarth received, together with the appropriate social security and pension contributions. Further, Hagen was then changed to a 211-day contract beginning with the 2018-2019 school year to be compliant with all other elementary and middle school principals whereby her annual salary dropped to $89,643. (PFOF 56-57). As alleged, Hagen is entitled to the difference in pay between her 211-day contract from that point forward in comparison to Steinbarth's pay going forward together with a calculation of the loss incurred for social security and pension contributions.

The District argues that due to the fact Hagen retired on March 1, 2019 (PFOF 94), she is not entitled to project these losses beyond March 1, 2019. In Hagen's deposition she stated she retired due to her dad and aunt's health, but those were only factors as she would not have retired had she been provided support for the classroom involving troubled kids. (PFOF 95). More specifically, Hagen testified that Roberts Elementary had an EBD (emotional and behavioral disorder) classroom where troubled kids from the District were being placed. As the school year went on, more and more kids were being placed into the EBD classroom from around the District which caused kids to be hurt. (PFOF 96). As a result, Hagen together with her staff requested radios in October 2018, but by March 2019 they still had not arrived and Hagen felt that if she left the District they would get more support for the kids. (PFOF 97). Hagen reached this conclusion due to the fact Sebert avoided her like the plague as after she went to Roberts all monthly meetings ended. (PFOF 87). Further, as soon as Hagen retired, radio support was provided, and an additional person was added to help. (PFOF 97). From Hagen's position, this was not a voluntary

retirement, but was the result of continued discrimination thereby allowing her to collect wage losses beyond March 1, 2019.

Further, the District as an alternative argument claims that since Hagen has not sought employment since March 1, 2019, she has failed her duty to mitigate and therefore is not entitled to wage losses beyond that date in any event. However, Hagen testified the reason she has not applied elsewhere is due in part to the fact she learned that when Rochon-Luft attempted to apply to other Districts, Sebert provided negative references and Hagen didn't think it would be any different for her. (PFOF 90). As such, there is question as to whether Hagen could have found comparable work by exercising reasonable diligence to mitigate her loss. Gaddy v. Abex Corp., 884 F.2d 312, 318 (7th Cir. 1989).

In any event, this argument contains issues of fact whereby Hagen should be allowed to modify her expert report accordingly based on any ruling this Court makes.

CONCLUSION

For all of the reasons stated herein, Plaintiff respectfully requests that Defendant's Motion for Summary Judgment be denied and that she be granted a jury trial.

Respectfully submitted this 27th day of August 2021.

**RETTKO LAW OFFICES, S.C.**
Counsel for Plaintiff


s/William R. Rettko
WILLIAM R. RETTKO
State Bar No. 1002608
15460 W. Capitol Drive, Suite 150
Brookfield, WI 53005
(262) 783-7200
bill@rettkolaw.com

28